IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ROY GALLEGOS,

     Plaintiff,

vs.                                    Civ. No. 97-629 JC\LCS

KENNETH S. APFEL,
COMMISSIONER OF SOCIAL SECURITY,

     Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION

Proposed Findings

1.  This matter comes before the Court upon Plaintiff's Motion to Reverse or Remand Administrative Agency Decision, filed February 19, 1998.  The Commissioner denied Plaintiff's request for both disability insurance and supplemental security income benefits.  Plaintiff alleges a disability due to back pain, hypertension, chest pain, and a mental impairment consisting of anxiety and depression.

2.  The Commissioner denied Plaintiff's applications for benefits both initially and on reconsideration.  After conducting an administrative hearing, the Commissioner's administrative law judge (ALJ) likewise denied the applications.  The Appeals Council did not review the ALJ's decision, thus the final decision of the Commissioner is the ALJ's decision.  Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. §405(g).

3.  The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence.  **Thompson v.**

1

**Sullivan**, 987 F.2d 1482, 1487 (10th Cir. 1993)(citations omitted).  Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests.  **Id**. (citation omitted).

4.  Plaintiff raises the following allegations of error with respect to the ALJ's decision:  1) the ALJ failed to consider whether the Plaintiff's back impairment, hypertension, and chest pain are severe impairments; 2) the ALJ did not properly find that the Plaintiff's mental impairment is not severe; 3) the ALJ failed to consider the combined effect of the Plaintiff's impairments; 4) the ALJ improperly made his pain determination; 5) the ALJ improperly concluded that the Plaintiff's residual functional capacity (RFC) allows him to perform the full range of sedentary work; and 6) the ALJ improperly applied the Medical-Vocational Guidelines (grids).

5.  "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity."  **Id**. at 1486 (citing 42 U.S.C. §423 (d)(1)(A)).  To determine disability, the Commissioner has established a five step sequential evaluation process.  **Id**.  The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled.  **Id**. (citations omitted).

6.  Steps two, three, and five of the sequential evaluation process are at issue in this case. At step two, the claimant must show that he has an impairment or combination of impairments which are severe enough to limit his ability to do basic work activities.  20 C.F.R. §§ 404.1520, 416.920.  At step three, the claimant can conclusively show disability if his impairment meets or equals a listed impairment.  **Id**.  At step five, the burden shifts to the Commissioner to show that the claimant has an RFC to do work in the national economy other than past relevant work.  **Id**.

The grids are used at this step to determine whether disability exists.  20 C.F.R. Part 404, Subpt. P, App. 2.  The grids reflect the existence of jobs in the national economy at various RFC levels by incorporating administrative notice of occupational publications and studies.  20 C.F.R. §§404.1566(d); 416.966(d).  This aids the Commissioner in determining what specific job types in the national economy the claimant can perform.  The grids assume that the claimant's sole limitation is lack of strength, i.e., an exertional impairment.  20 C.F.R. Part 404, Subpt. P, App. 2, §2000(e)(2).

7.   The Plaintiff argues first that the ALJ failed to consider his back impairment, hypertension, and chest pain at step two of the sequential evaluation process.  The Plaintiff is correct.  Despite the evidence of a herniated disc (Tr. 204, 211), variable hypertension (Tr. 174, 177, 183, 188, 190), and chest pain (Tr. 131-32, 136, 185, 192), the ALJ found that the Plaintiff's severe impairments consisted only of "resolved coronary artery stenosis and left ankle fracture." Tr. 14, 28.  The ALJ never discussed the Plaintiff's back impairment, hypertension, and chest pain in a step two analysis.  Such a failure to discuss those impairments constitutes error and provides a basis for a remand.

8.   The Plaintiff also argues that the ALJ did not support with substantial evidence or with a proper legal basis his conclusion that the Plaintiff does not have a severe mental impairment.  At step two, the Plaintiff must show that his mental impairment limits his ability to do basic work activities such as the ability to follow simple instructions; use of judgment; appropriate responses to fellow workers, supervisor, and usual work situations; and the ability to deal with changes in routine work.  20 C.F.R. §§404.1521(b); 416.921(b).  Strangely, the ALJ in this case used a step three listings analysis to make his step two analysis with respect to the alleged mental impairment.

3

Tr. 16-19.  This action is clearly contrary to the law.  A remand is appropriate to remedy this error.[1]

9.  Next, the Plaintiff asserts that the ALJ failed to consider all of his impairments in combination.  The regulations require that the Commissioner consider all impairments in combination when he is deciding the severity of claimant's impairments even if those impairments, if considered separately, would not be severe.  20 C.F.R. §§ 404.1523; 416.923.  The Commissioner has a duty to make specific and well articulated findings as to the effect of the combination of impairments.  **See Hawkins v. Heckler**, 600 F.Supp. 832, 837 (D.Kan. 1985).  Moreover, the Social Security Act requires that the Commissioner consider the combined impact of multiple impairments throughout the disability determination process.  **Zebley by Zebley v. Bowen**, 855 F.2d 67, 76 (3d Cir. 1988), **aff'd**, 493 U.S. 521 (1990).  The ALJ did not consider the Plaintiff's back pain, chest pain, hypertension, and mental impairment in combination nor did he make "specific and well articulated findings" as to their combined effect.  **See** Tr. 20.  Consequently, the ALJ erred by failing to comply with the duty to consider impairments in combination.  That failure is another reason to remand this matter.

10.  The Plaintiff further contends that the ALJ erred in making his pain determination.  To analyze properly a claimant's assertion of disabling pain, the ALJ must first determine whether the claimant has established by objective medical evidence that he has a pain-producing impairment.  **Musgrave v. Sullivan**, 966 F.2d 1371, 1375-76 (10th Cir. 1992)(citing **Luna v. Bowen**, 834 F.2d 161, 163-64 (10th Cir. 1987)).  If the claimant establishes a pain-producing

---

[1]The Court notes that neither party attempted to obtain the psychological records written by Dr. John Lang, Ph.D.  Tr. 179, 210.  Upon remand, the Plaintiff should obtain those records or provide the Commissioner with sufficient information so that he can obtain them.

4

impairment, then the ALJ must consider whether there is a "loose nexus" between the proven impairment and the subjective allegation of pain.  **Id**.  If the ALJ finds that there is a "loose nexus," the ALJ must decide whether after considering all of the objective and subjective evidence, the claimant's pain is in fact disabling.  **Id**. At this point, "the absence of an objective medical basis for the degree of severity of pain may affect the weight to be given to the claimant's subjective allegations of pain, but a lack of objective corroboration of the pain's severity cannot justify disregarding those allegations."  **Luna**, 834 F.2d at 165.

11.   The ALJ reached the credibility portion of the pain analysis.  He found that "based on the medical reports and claimant's testimony at the hearing, the claimant's pain was not 'constant' and 'unremitting.' Claimant takes walks and his prescribed course of treatment is physical therapy and exercise."  Tr. 24.  The ALJ also credited the report of Dr. Harding which the ALJ found allowed the Plaintiff  "to work without restrictions."  Tr. 25.  The ALJ further stated that "[a]dopting Dr. Harding's findings, we hold claimant's pain to be mild and alleviated with over the counter medication and exercise.  We find claimant's pain not to be constant, unremitting and wholly unresponsive to treatment."  **Id**.  The ALJ concluded that the "[c]laimant's subjective allegations of pain are not supported by 'observable manifestations.'" Tr. 28.

12.   The Plaintiff testified that his doctor told him to walk and that he does walk around the house the distance of a block.  Tr. 230-31.  There is no mention in the record about physical therapy.  The ALJ failed to discuss the Plaintiff's testimony that he used a TNS unit for three years to help alleviate back pain before it became ineffective and actually irritated him.  Tr. 225. The ALJ also failed to discuss the Plaintiff's testimony that he uses a back support belt three times a week.  Tr. 225-26.  Additionally, the ALJ did not mention that the Plaintiff had undergone an

unsuccessful epidural steroid injection for his back pain or that he was a candidate for back surgery.  Tr. 210-11.

13.  The ALJ's use of Dr. Harding's reports for his all encompassing conclusion that the Plaintiff does not have any physical restrictions is misleading.  First, Dr. Harding is a cardiologist and therefore, did not address the Plaintiff's back pain.  Tr. 174-77.  Dr. Harding stated that the Plaintiff "is doing well from a cardiovascular point of view."  Tr. 174.  **See also** Tr. 177.  Even so, approximately eight months after Dr. Harding made the above reports, a consulting physician, Dr. Miller, noted recurrent chest pain and recommend "a thallium stress test to see if his catherectomized [sic] right coronary artery is still patent."  Tr. 204.  Dr. Miller moreover noted that the Plaintiff has "[l]ow back pain with some evidence of nerve root irritation."  **Id**.  Dr. Lujan, Plaintiff's treating physician, likewise stated that the Plaintiff denied how much chest pain he was having and that she believed the Plaintiff needed "to be recathed and/or have a Thalium [sic] Stress Test."  Tr. 184.

14.  Regarding the use of medications, the Plaintiff takes nitroglycerin for prolonged severe chest pain.  Tr. 230.  Plaintiff also has been prescribed Motrin.  Tr. 183, 186.  The Plaintiff testified that he takes Ibuprofen for his back pain.  Tr. 226.  The Ibuprofen takes 10 minutes to take effect and lasts for five hours.  Tr. 227.  The Plaintiff stated that he "guessed" the Ibuprofen helped.  Tr. 226.

15.  Furthermore, contrary to the ALJ's finding that there are no "observable manifestations" to support the allegations of pain, Dr. Miller found that the Plaintiff's left leg had atrophied and lost sensory perception.  Tr. 203.  In fact, the Plaintiff later fractured his left foot when he misstepped.  Tr. 213-16.  The above summary of evidence leads me to conclude that the

ALJ erred by failing to fully consider all of the relevant evidence in making his pain credibility.[2] Consequently, the ALJ's pain determination is faulty and should be addressed upon remand.

16.   The Plaintiff argues next that the ALJ erred in making his RFC determination that the Plaintiff can perform the full range of sedentary work.  The Commissioner cannot theorize about a claimant's ability to perform at a particular RFC level.  **See Haley v. Celebrezze**, 351 F.2d 516, 519 (10th Cir. 1965). "A consultative physician should do an RFC assessment when no other RFC assessment is in the record, especially where the Plaintiff complains of pain, takes pain medication, and has some objective abnormality."  **Gathright v. Shalala**, 872 F.Supp. 893, 898 (D.N.M. 1993) (citing **Rivera-Torres v. Sec'y of Health & Hum. Serv.**, 837 F.2d 4, 6 (1st Cir. 1988).  In this case, there is no RFC assessment in the administrative record.  Accordingly, the ALJ must have theorized when he found that the Plaintiff can do sedentary work.  Instead, the ALJ should have obtained an RFC assessment from one of his consulting physicians.  A remand is, therefore, necessary to obtain that RFC assessment.

17.   The Plaintiff further contends that the ALJ should have obtained a vocational expert to determine the RFC because according to the Plaintiff he must alternative sitting with standing. Where a claimant cannot sit or stand for prolonged periods of time, the ALJ must consult a vocational expert.  **See Ragland v. Shalala**, 992 F.2d 1056, 1059 (10th Cir. 1993).  Because there is no medical evidence of a need to alternate sitting with standing, I find that the ALJ was not obligated to obtain a vocational expert at that time.

---

[2]Plaintiff also argues that the ALJ should have considered the psychological contributions to his pain, citing **Winfrey v. Chater**, 92 F.3d 1017, 1021 (10th Cir. 1996).  However, unlike **Winfrey**, there is no somatoform diagnosis which might link the Plaintiff's pain with a psychological cause or contribution. Therefore, there is no need at this time to consider Plaintiff's mental impairment in the pain determination.

18.  Lastly, the Plaintiff contends that the ALJ erred when he mechanically applied the grids.   "'Resort to the grids is particularly inappropriate when evaluating nonexertional limitations such as pain and mental impairments.'" **Thompson v. Sullivan**, 987 F.2d 1482, 1488 (10th Cir. 1993)(quoting **Hargis v. Sullivan**, 945 F.2d 1482, 1490 (10th Cir. 1991)).  In that situation, "'[t]he grids may serve only as a  framework to determine whether sufficient jobs remain within a claimant's range of residual functional capacity.'" **Id**. (citations omitted).  The mere presence of a nonexertional impairment does not preclude reliance on the grids.  **Id**. (citing **Ray v. Bowen**, 865 F.2d 222, 225 (10th Cir.1989)).  The nonexertional impairment must interfere with the ability to work.  **See Ray**, 865  F.2d at 225 (claimant alleged pain but not that it prevented her from sitting  for extended period of time or from doing seated work); **cmp**. **Gossett v. Bowen**, 862 F.2d 802, 807 (10th Cir. 1988) (doctors' evidence showed claimant had no significant nonexertional limitation).  At this point in the proceedings, the ALJ has not properly assessed the severity of the Plaintiff's mental impairment nor has he fully discussed the Plaintiff's allegation of pain.  I, therefore, find that I am precluded from determining whether the ALJ correctly applied the grids as contemplated by the above law.

Recommended Disposition

I recommend granting in part the Plaintiff's Motion to Reverse or Remand Administrative Agency Decision.  Specifically, this matter should be remanded to the Commissioner so that he shall properly determine whether the Plaintiff's allegations of back pain hypertension, chest pain, and mental impairment are severe under step two of the sequential evaluation process; consider all of the Plaintiff's impairments in combination; fully analyze the Plaintiff's allegation of disabling pain; and obtain an RFC assessment from a consulting physician.  Timely objections to the

foregoing may be made pursuant to 28 U.S.C. §636(b)(1)(C).  Within ten days after a party is

served with a copy of these proposed findings and recommendations that party may, pursuant to

§636(b)(1)(C), file written objections to such proposed findings and recommendations.  A party

must file any objections within the ten day period allowed if that party wants to have appellate

review of the proposed findings and recommendations.  If no objections are filed, no appellate

review will be allowed.

 

Leslie C. Smith
UNITED STATES MAGISTRATE JUDGE